UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

CATRINA HEGGINS, et al,            §
*Plaintiffs*,                      §
                                   §
v.                                 §        Case No. 6:24-cv-00388
                                   §
UNION PACIFIC CORPORATION, et al,  §
*Defendant*.                       §

**ORDER**

Before the Court is Defendant Union Pacific Railroad's ("Defendant") Motion for Summary Judgment (Dkt. No. 21). The Court heard arguments on the Motion at the parties' final pre-trial conference on February 10, 2026. As stated orally at the hearing, the Motion is **GRANTED.** The following sets forth the Court's reasoning.

## I.    BACKGROUND

This lawsuit arises from an accident wherein a Union Pacific Railroad train and a tractor operated by Decedent George E. Heggins, Sr. collided in Jewett, Texas, at a private railroad crossing. Decedent drove a Zetor 6230 tractor westbound onto the railroad crossing and was struck and killed by the approaching train that Union Pacific Railroad was operating. The train's crew sounded the horn and applied the locomotive's emergency brake but could not prevent the collision.

Plaintiffs brought this suit claiming that Defendants breached thirteen common law duties, all brought under two claims for negligence and gross negligence. Dkt. No. 1-3, Pl's Compl. ¶ 12. Defendants Union Pacific Corporation and Union Pacific Railroad separately brought motions for summary judgment. Defendant Union Pacific Corporation argued it is entitled to summary judgment because it is merely a holding company that did not own, operate, maintain, or repair the

1

railroad tracks at the accident location and did not employ the involved train crew. Dkt. No. 20 at 4.[1] Defendant Union Pacific Railroad argued it is entitled to summary judgment because (i) Plaintiffs' claims related to train speed, crew training, and crew supervision are preempted by federal law, (ii) Decedent's failure to yield the right-of-way to the approaching train was negligence per se and the sole proximate cause of the accident, and (iii) Plaintiffs have no evidence of the remaining claims.

Plaintiffs did not file timely responses to either motion. After being ordered by United States Magistrate Judge Derek T. Gilliland to show cause for their failure to timely respond to the motions, Plaintiffs filed a response to the show cause order. See Dkt. Nos. 25, 31. Plaintiffs explained that they were only aware of the first Motion for Summary Judgment filed by Union Pacific Corporation and made a "deliberate strategic decision" not to oppose it. Dkt. No. 31 ¶ 5.

Plaintiffs attempted to file a response to Union Pacific Railroad's Motion for Summary Judgment by filing a Motion for Leave to file it. Dkt. No. 32. The Court denied the motion for leave, finding that the relevant test weighed in favor of denial. Dkt. No. 52. However, the Court still heard Plaintiffs' argument in opposition during the February 10 pre-trial conference.

## II.    LEGAL STANDARD

Summary judgment is proper if "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Meadaa v. K.A.P. Enters., L.L.C.*, 756 F.3d 875, 880 (5th Cir. 2014). A fact is "material" if its resolution could affect the outcome of the action. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). A dispute is genuine only "if the evidence is such that a reasonable jury

---

[1] Plaintiffs represented that they would be dismissing Defendant Union Pacific Corporation from the suit during the pre-trial conference, so the undersigned stated its motion for summary judgment would be denied as moot.

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, the nonmoving party must come forward with specific facts that establish the existence of a genuine issue for trial. *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013) (quoting *Allen v. Rapides Par. Sch. Bd.*, 204 F.3d 619, 621 (5th Cir. 2000)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.' " *Hillman v. Loga*, 697 F.3d 299, 302 (5th Cir. 2012) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In deciding whether a fact issue has been created, the court must draw all reasonable inferences in favor of the nonmoving party, and it "may not make credibility determinations or weigh the evidence." *Tiblier v. Dlabal*, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## III.    DISCUSSION

### 1.  Plaintiffs' Excessive Speed, Inadequate Training, and Inadequate Supervision Claims

Defendant argues that Plaintiffs' claims based on excessive speed, inadequate training, and inadequate supervision are preempted by the Federal Rail Safety Act of 1970 ("FRSA"). Dkt. No. 21 at 4-5. Defendant argues that the FRSA directs the Secretary of Transportation to study and develop solutions to safety problems posed by grade crossings and pass regulations relating to railroad safety. *Id.* at 5. Defendant further argues that Congress gave preemptive effect to all railroad safety laws and regulations the Secretary of Transportation prescribes. *Id.*

Plaintiffs stated that they conceded certain preemption arguments and only intended to

3

proceed on the remaining claims of failure to sound the horn, keep a proper lookout, and apply the brakes. *See* Feb. 10 Hr. Tr. Draft Version, 11:9-17.

Cited by the Defendant, the United States Supreme Court, in *CSX Transp., Inc. v. Easterwood*, held that "applicable federal regulations may pre-empt any state 'law, rule, regulation, order, or stand relating to railroad safety.' Legal duties imposed on railroad by common law fall within the scope of the broad phrases." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Defendant argues that, under *CSX Transportation*, Plaintiffs cannot maintain a common law negligence or gross negligence claim against Union Pacific if a federal regulation covers the subject matter. Dkt. No. 21 at 6 (citing *CSX Transp., Inc.*, 707 U.S. at 676). Defendant argues that Plaintiffs' common law negligence and gross negligence claims related to (1) the speed of the train, (2) the training of the train operator, and (3) supervision of the train crew must be dismissed as pre-empted because federal regulations cover those subject matters. *Id.*

With regard to train speed, Defendant argues that the Federal Railroad Administration regulations cover this subject matter, as federal regulations establish the maximum allowable operating speeds for railroads based on the "class" of railroad track. *Id.* at 7 (citing 49 C.F.R. §219(a), 49 C.F.R. § 213.9). Defendant argues that the relevant crossing had a regulation speed limit of 60 miles per hour, and at the time of the accident the train was travelling approximately 50 miles per hour. *Id.* (citing 49 C.F.R. § 213.9). Plaintiff did not dispute Defendant's argument about the train speed.

With regard to crewmember training and supervision, Defendant points to the FRSA's "minimum Federal safety standards for the eligibility, training, testing, certification and monitoring of all locomotive engineers […]" *Id.* at 6 (citing 49 C.F.R. § 240.1(b)). Additionally, Defendant argues the Federal Railroad Administration has "imposed detailed regulations and

4

particularized rules with regard to locomotive crewmember training, the structure of such training, and the certification of locomotive crewmembers." *Id.* (citing 49 C.F.R. § 249 et seq.).

Given Plaintiffs' lack of argument against these preemption claims and their stated concession, as well as Defendant's argument for preemption, the Court finds Defendant Union Pacific Railroad is entitled to summary judgment on these claims. The Court agrees these are preempted by relevant federal law and therefore summary judgment in favor of Defendant is proper for them.

### 2. Plaintiffs' Remaining Claims

In addition to the traditional summary judgment grounds based on preemption, Defendant moves for no-evidence summary judgment on Plaintiffs' remaining claims.[2] Defendant argues there is no evidence that the Union Pacific crew members were negligent or grossly negligent in responding to Decedent crossing in front of them. *Id.* at 10.

First, Defendant argues that there is no evidence that the train could not have stopped before impact. *Id.* Defendant's expert, Mark Pollan,[3] opined that the trail was not capable of stopping before the collision occurred. Dkt. No. 21-5, Pollan's Rep. at 7. Mr. Pollan studied the train's external cameras and timestamps from the event recorder data and determined that the train travelled 223 feet in the three seconds the Decedent's vehicle was visible before impact. *Id.* at 5. Mr. Pollan explained that the train could not have stopped in time after seeing the Decedent—even if its crew had immediately applied the emergency brake. *Id.* Defendant therefore argues there was nothing Union Pacific's crew could have done in response to seeing the Decedent to prevent the

---

[2]Defendant separately argued that Decedent's conduct was the sole proximate cause of the accident as a ground for summary judgment. The Court finds it is not necessary to determine whether that is the case—particularly because it was not addressed in the pre-trial conference and the Court lacks Plaintiffs' response to that argument. Summary judgment will rest on the other two grounds argued by Defendant.

[3]The Court notes that the correct spelling of Defendant's expert's name is "Pollan"—though the Motion itself refers to Mr. Polland.

accident. Dkt. No. 21 at 10. Plaintiff did not offer an argument in response to this at the hearing. The Court agrees that this ground of Plaintiffs' claims is not supported by any evidence and that summary judgment should be granted to Defendant with respect to this theory of negligence.[4]

Second, Defendant argues that there is no evidence of negligence for failure to engage the train's horn. Defendant argues that the locomotive video and event recorder data show that the horn was sounded at 9:26-13 and that was the exact second the Decedent's tractor became visible. *Id.* at 11 (citing Dkt. No. 21-4, Ex. D). Plaintiffs argued at the hearing that there was a requirement to blow the horn when there was peril. Feb. 10 Hr. Tr. Draft Version 12:6-8. Plaintiffs explained that their horn argument was tied to the vegetation argument, alleging that if the area had been better maintained there would have been more time to sound the horn. *See id.* 12:16-13:7. The theory that is based on not blowing the horn, however, boils down to Plaintiffs' allegation that there was a duty to blow the horn once there was peril. *Id.* 14:19-22.

With respect to Plaintiffs' negligence and gross negligence claims pertaining to the failure of Defendant to blow the horn, the Court finds that summary judgment should be granted for Defendant. Plaintiffs offered no evidence to support that there was a duty to blow the horn before the accident, and no evidence that Defendant failed to apply the horn as soon as there was peril. As soon as there was peril, the horn was sounded. There is thus a failure to show (i) duty to blow the horn before the accident and (ii) breach once the duty was triggered by there being peril.

Third, Defendant argues that there is no evidence that the crew failed to keep a proper lookout. Dkt. No. 21 at 11. Plaintiffs did not contest this argument in the hearing. The Court finds that summary judgment should be granted for Defendant for this theory, as the evidence establishes that the crew sounded the horn the exact second the Decedent's tractor became visible.

---

[4]Grounds (f) and (h) of Plaintiffs' negligence/gross negligence cause of action appear to be based on this theory.

Fourth, Defendant argues that there is no evidence the railroad crossing warnings were not working properly. *Id.* at 11. Defendant argues that the crossing was protected by non-electric signage, so there cannot be a malfunction in the warning signs. Plaintiff does not dispute this particular argument. But, as discussed below, Plaintiffs argue that the area should have been properly maintained such that the Decedent and train had more visibility. For this particular theory, the Court agrees that summary judgment should be granted for Defendant.[5]

Finally, the Court turns to Plaintiffs' claims that the vegetation in the area contributed to this accident and that Defendant should have maintained the area. In Plaintiffs' cause of action, this is labeled "(l) failure to properly maintain and remove vegetation that obstructed the view of the track." Dkt. No. 1-3, Pl's Compl. ¶ 12. Defendant argues that there is no evidence that trees prevented a driver—such as Decedent—crossing the track from seeing an oncoming train. Dkt. No. 21 at 12. Defendant argues that Train in View Photos taken on the day of the accident show the train visible from the stop sign. *Id.* (citing Dkt. No. 21-8, Ex. H). Defendant argues that had Decedent stopped at the stop sign, he would have seen the train and allowed it to pass before proceeding into the intersection. *Id.*

Plaintiffs argue that the failure to maintain the vegetation in the area affected Union Pacific's ability to see the Decedent early enough to react quickly by blowing the horn. *See* Feb. 10 Hr. Tr. Draft Version 15:16-20. Defendant argues that there was no duty to clear vegetation in the State of Texas at a private crossing of a private road—which this accident involved. *See id.* 16:2-25 (citing 43 TEX. ADMIN. CODE § 7.37). The relevant law provides:

> (c) Vegetation. A railroad shall control vegetation on its right-of-way (except for the roadbed and areas immediately adjacent to the roadbed) for a distance of 250 feet each way from the centerline of a ***passive public grade crossing***, so that vegetation does not block the vehicular highway traffic's view of approaching trains. The 250

---

[5]This is found in (k) of Plaintiffs' negligence/gross negligence cause of action.  Dkt. No. 1-3, Pl's Compl. ¶ 12.

> feet shall be measured from the point where the centerline of the railroad crosses the centerline of the public road. Where the right-of-way is fenced, this subsection shall be deemed complied with if vegetation is controlled up to two feet from the fence.

43 TEX. ADMIN. CODE § 7.37 (emphasis added). The relevant law does not impose any duty to clear vegetation at private crossings. Further, Defendant argues that the evidence shows the approaching train was visible from the stop sign at the crossing. Plaintiffs argue that the vegetation question should have still been presented to the jury because the area at issue was on the line of the track and Union Pacific had an entire department responsible for that sort of work. *See* Feb. 10 Hr. Tr., Draft Version 22:4-20.

The Court agrees with Defendant that there is no evidence of a duty in this case for Union Pacific Railroad to go onto this private road to adjust vegetation. There is neither a duty imposed by law, nor is this a situation where a common law duty could have arisen—as the vegetation was not obstructing view of the train. Exhibit H shows the view when stopped at the stop sign next to the crossing. The approaching train is visible and not obstructed by vegetation such that a person who approached the stop sign and stopped would not see it. The Court agrees that there is no duty to support this theory.

Summary judgment should be granted for Defendant on all theories for Plaintiffs' negligence/gross negligence cause of action. The Court finds that there is no evidence Defendant was negligent or grossly negligent in responding to Decedent crossing in front of them or maintaining the crossing where the accident occurred.

## IV.    CONCLUSION

For the foregoing reasons, Defendant Union Pacific Railroad's Motion for Summary Judgment is **GRANTED**.

8

**SIGNED** on February 23, 2026.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE